UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEGHANN KNICKERBOCKER, LISA HOLLAND, JANET O'CONNELLL, and JOHN GLADNEY,<br><br>Plaintiffs,<br><br>vs.<br><br>CORINTHIAN COLLEGES, INC., d.b.a. EVEREST COLLEGE INC., a Delaware Corporation.<br><br>Defendant. | NO.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND** |

This action is brought on behalf of Meghann Knickerbocker, Lisa Holland, Janet O'Connell, and John Gladney ("Plaintiffs") as a result of the race discrimination, retaliation, and hostile work environment that they incurred by Corinthian Colleges Inc., d.b.a. Everest College Inc. ("Defendant"). Plaintiffs allege as follows:

### I.  JURISDICTION AND VENUE

1.1  This Court has jurisdiction over this action pursuant to RCW 49.60, since some of the actions by Defendant alleged in this Complaint occurred in the State of Washington.

COMPLAINT FOR DAMAGES - 1

HKM EMPLOYMENT ATTORNEYS PLLC
1325 Fourth Avenue, Suite 540
Seattle, Washington  98101
(206) 838-2504

## II.     PARTIES

2.1     Plaintiffs Meghann Knickerbocker, Lisa Holland, Janet O'Connell, and John Gladney at all times material hereto resided in the state of Washington.

2.2     Defendant is and was, at all times material hereto, a corporation licensed by the Washington Secretary of State to conduct business in Washington.  Defendant conducts business in King County, Washington, and has offices for the transaction of business in King County, Washington.  Defendant is an "employer" subject to Washington state statutes governing employment discrimination including the Washington State Law Against Discrimination, Ch. 49.60 RCW.

## III.     FACTUAL BACKGROUND

3.1     Plaintiffs are all former employees of Defendant.  Plaintiffs Knickerbocker, Holland, and Gladney are all racial minorities. Plaintiffs Knickerbocker and Gladney are African American.  Plaintiff Holland is Native American and Puerto Rican.  Plaintiff O'Connell is Caucasian.

3.2      Plaintiffs were all hired by Defendant to work in administrative capacities on Defendant's various campus locations.  Plaintiffs Knickerbocker, Holland, and O'Connell were located at Defendant's Bremerton campus while Plaintiff Gladney was located at Defendant's Seattle campus.

3.3     At all relevant times, the Plaintiffs were satisfactorily performing their job duties.

3.4     Plaintiffs all have an association with one another, as they have worked together for years.  Many of the Plaintiffs socialized with each other outside of work.

3.5     Plaintiffs were subjected to a racially hostile working environment.  Plaintiffs Knickerbocker, Holland, and O'Connell were subject to a racially hostile work environment on Defendant's Bremerton campus.  Plaintiff Gladney was subject to a racially hostile work environment on Defendant's Seattle campus.  Both campus locations utilize the same Human Resources Department.

3.6     Plaintiffs were subjected to continual racist comments and jokes while at work by various employees, including but not limited to, Sheila Austin and Lisa Cook.  The racist comments made repeatedly included, but were not limited to, the following:

a.  This school is full of "Nigger lovers";
b.  You are a "Nigger fucker";
c.  Why aren't you going out and getting your free land from the Indians?;
d.  Nappy hair;
e.  Wetback;
f.  We knew the day a black President would be elected would be the day pigs flew and now we have the swine flu;
g.  You should be happy someone like you even has a job;
h.  I will never like black people;
i.  I will never interview another black person again;
j.  I don't want to go to a place to drink if there are going to be primarily "Niggers" there.

3.7     Many of the above referenced racial comments and slurs were directed at and made in the presence of racial minorities and Caucasian Plaintiff O'Connell.

3.8     Racial comments were directed at Plaintiff O'Connell because of her close association with minority employees, for the purpose of creating a hostile work environment and to intimidate Plaintiff O'Connell and discourage her association with minority Plaintiffs and minority employees generally.

3.9 Plaintiffs consistently complained to Human Resources, and employees Jenna Rygol and Meredyth Given, about the racial hostile work environment and those employees furthering it. Neither Ms. Rygol nor Ms. Given investigated these concerns and, in fact, later promoted those individuals responsible for the racist comments.

3.10 In addition to the frequent racist comments, Plaintiffs were subjected to a variety of racist conduct, including but not limited to, treating employees of color more harshly than Caucasian employees, yelling at and degrading employees of color, refusing employees of color advancement opportunities, and subjecting employees of color to discipline for actions that similarly situated Caucasian employees were not disciplined. The racist conduct included, but was not limited to, the following:

   a. Requiring Plaintiffs Knickerbocker and Holland to enter their office building through a separate door, a door that similarly situated Caucasian employees and Caucasian Plaintiff were permitted to enter through;

   b. Requiring Plaintiff Knickerbocker to dance in front of employee Jenna Rygol, so that Ms. Rygol could ascertain whether Plaintiff Knickerbocker danced more seductively than her similarly situated Caucasian co-workers;

   c. Investigating and interrogating Plaintiff Knickerbocker for allegations of academic impropriety, associated with her school attendance, none of which were ever founded. On information and belief, no other staff member attending classes has been treated in such a fashion;

   d. Interrogating all Plaintiffs about their social interactions with one another outside of work; similarly situated Caucasian employees were not interrogated about their social interactions outside of work;

COMPLAINT FOR DAMAGES - 4

    e.    Interrogating Plaintiff O'Connell about her daughter's friendship with Plaintiff Knickerbocker; Plaintiff O'Connell's daughter is not an employee of Defendant;

    f.    Prohibiting social interaction among and between racial minority Plaintiffs and Caucasian Plaintiff;

    g.    Launching internal Human Resource investigations into Plaintiffs Knickerbocker, Holland, and O'Connell based on allegations that Plaintiffs were, in fact, socializing outside of work;

    h.    Denying Plaintiff Knickerbocker awards and promotions, despite her solid history with the company and her experience because she was just "not the right fit" for the company;

    i.    Terminating Plaintiff Gladney without cause and denying him access to the employee hotline information after Plaintiff Gladney became aware that his campus was preventing Plaintiff Knickerbocker's transfer simply because she was "not a good fit";

    j.    Placing Plaintiffs O'Connell, Knickerbocker, and Gladney on administrative leave, without cause, and terminating all Plaintiff employees without cause;

    k.    Summarily firing seven racial minority employees without cause between both the Seattle and Bremerton campuses, leaving only one racial minority employee left on the Bremerton campus. On information and belief, that employee is currently on a write-up and has been targeted for termination as well.

3.11    The racially hostile work environment described above was severe and pervasive.

3.12    The racially hostile work environment described above affected the terms and conditions of employment for both ethnic minority employees and Caucasian employees.

3.13    The racially hostile work environment described above also deprived Caucasian workers of the important benefits from interracial associations and contacts with ethnic minorities unaffected by discrimination and/or harassment. In particular, the racial harassment described

above was a frequent subject of conversation, diminished workplace harmony, increased racial tensions, highlighted racial differences, and otherwise affected workplace morale of all Plaintiffs. The racial harassment adversely affected the ability of Plaintiffs to work with their fellow employees and Human Resources, which consistently refused to take any remedial action.

3.14   The racially hostile work environment described above culminated in the loss of all of the Plaintiffs' jobs.  In fact, every Plaintiff was terminated within a matter of weeks of one another, in some instances within a matter of days.

3.15   Rather than take any remedial action against those employees promulgating a racially hostile work environment, which Defendant was aware of due to repeated complaints to Human Resources by Plaintiffs, Defendant permitted the racially hostile work environment to continue.

3.16   In fact, the employees who made racist comments and engaged in racist conduct increased their offensive and illegal behavior after Plaintiffs lodged complaints with Human Resources.  As a result, all Plaintiffs were subjected to frivolous investigations for alleged policy violations and placed on frivolous administrative leaves before being wrongfully terminated. Even though their actions were retaliatory to Plaintiffs, Defendant rewarded these employees with job security and ultimately, for Lisa Cook, additional compensation in the form of a stipend.

3.17   A substantial factor for the retaliatory abuse and continued hostile criticism of Plaintiffs was the direct and indirect complaints made about the racially hostile work environment.

3.18  Defendant maintained a reckless disregard for Plaintiffs' statutorily protected civil rights and wrongfully terminated Plaintiffs based on illegal considerations of race and race relations.

## IV.  CAUSES OF ACTION

4.1  Plaintiffs reallege paragraphs 1.1 through 3.18 of the Complaint and hereby incorporate the same by reference.

4.2  The above stated facts give rise to a claim of racial harassment in violation of RCW 49.60.180 and 42 U.S.C. § 1981.  Plaintiff O'Connell alleges racial harassment on her own behalf and not on behalf of racial and/or ethnic minorities.

4.3  The above stated facts give rise to a claim of retaliation for having opposed a racially hostile work environment in violation of RCW 49.60.210 and 42 U.S.C. § 1981.

4.4  The above stated facts give rise to a claim of associational discrimination and retaliation in violation of RCW 49.60 *et seq.* and 42 U.S.C. § 1981.

4.5  The above stated facts give rise to a claim of wrongful termination in violation of RCW 49.60 *et seq.*

## V.  JURY DEMAND

4.6  Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a trial by jury as to all issues so triable in this action.

## VI. PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for relief as follows:

    A.    Damages for back pay, front pay, lost benefits, and medical expenses in an amount to be proved at trial;

    B.    Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation;

    D.    Prejudgment interest in an amount to be proved at trial;

    E.    Compensation for any tax penalty associated with a recovery;

    F.    Statutory Punitive Damages;

    G.    Reasonable statutory attorneys' fees and costs; and

    H.    Whatever further and additional relief the court shall deem just and equitable.

Respectfully submitted this 3rd day of July, 2012.

**HEYRICH KALISH MCGUIGAN PLLC**

s/*Lisa A. Burke*_____
LISA A. BURKE, WSBA #42859
DANIEL KALISH, WSBA #35815
**HKM EMPLOYMENT ATTORNEYS PLLC**
1325 Fourth Avenue, Suite 540
Seattle, WA 98101
Telephone: 206-838-2504
Fax: 206-838-2505
E-mail: lburke@hkm.com
E-mail: dkalish@hkm.com

*Attorneys for Plaintiffs*